## Case No. 5,839.

### GRISWOLD v. The NEVADA.

### SHERMAN v. The SAME.

[2 Sawy. 144.][1]

District Court, D. California. Jan. 5, 1872.

ADMIRALTY—STALE DEMANDS BARRED.

Where libels in rem against a vessel were not filed until nearly two years after the cause of action had accrued, the libellants having been, during the whole period, residents of the state and under no disability to sue, and the vessel had made repeated voyages in the interim, and, for a considerable time prior to the filing of libels, had remained constantly within the jurisdiction, and the claimant was a mortgagee, without notice, under a mortgage made to him about *nine months after the cause of action accrued,* and about fourteen months before suit was brought; *held*, that the demand was stale, and barred by prescription.

[Cited in The Columbia, Case No. 3,036; Fitzgerald v. The H. A. Richmond, Id. 4,839;

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

The Bristol. 11 Fed. 162; The Queen of The Pacific, 61 Fed. 215.]

[This was a suit in admiralty by W. N. Griswold against the steamer Nevada, and Charles Sherman against the same.]

E. W. McGraw, T. A. Brown, and Mills, for libellants.

Doyle & Barber, for claimant.

HOFFMAN, District Judge. The libels in these cases, which were tried together by consent, are filed to recover damages for injuries to the libellants, who were passengers in the above vessel, caused by partaking of food which, by reason of the negligence and unskillfulness of the servants of the then owners of the steamer, contained, as is alleged, poisonous ingredients. It is objected by the claimant, that the demand of the libellants, at least so far as it is sought to be enforced in rem, is barred by prescription and by their laches and neglect to assert it within a reasonable time. The voyage, during which the cause of action accrued, was commenced on the eleventh of December, 1867, and terminated on the fifteenth of the same month. The libels were filed on the third of November, 1869.

On the tenth of November, 1868, about nine months after the right of action accrued, and about fourteen months before suit was brought, the North American Steamship Company, the owner of the vessel, executed a mortgage to secure the sum of $250,000, to W. H. Webb, the present owner and claimant. On the tenth of January, 1870, this mortgage was foreclosed, and the vessel sold under a power of sale contained in the mortgage. She brought the sum of $65,000, of which $15,000 was applied to the satisfaction of a prior mortgage. Mr. Webb, therefore, who seems to have been the purchaser, has an unsatisfied claim against the mortgagors for $200,000.

For a considerable time after the completion of the voyage on which the cause of action arose, the vessel continued to make her regular trips between this port and Panama, returning at short and stated intervals within the jurisdiction of the court. She was then laid up at Benicia, where she remained until attached in these suits. At the time of taking the mortgage the claimant had no notice or knowledge of the demands of the libellants, and was not aware that they claimed any lien upon the vessel. Except during the temporary absence of the vessel on her voyages to Panama, no obstacle appears to have existed to the commencement of a suit by the libellants at any time after their arrival in December, 1867. An action at law against the company was instituted by them some time in June, 1869, but failed for want of due service of summons on the defendant.

Although the statute of limitations does not apply to admiralty proceedings, the courts uniformly refuse their aid to enforce stale demands. Whether a demand shall be so considered will depend upon the circumstances of the case, and rests, to a certain extent, in the discretion of the court.

Justice and policy require that the tacit and often secret liens on vessels recognized by the maritime law should be promptly enforced, and that the lien should be considered neglected and abandoned whenever the party claiming it has omitted to sue for any considerable period, during which he has been under no disability, and when the rights of third persons who have become innocent purchasers, or encumbrancers, have intervened.

Maritime liens, unlike those recognized by the common law, are not accompanied by possession. No public register or record is made of them, and great injustice might be done, if these liens could be retained, after the property thus secretly encumbered has been allowed to depart on repeated voyages, or to be transferred to innocent purchasers without any attempt to enforce the lien by the party claiming it. The Nestor [Case No. 10,126]; Packard v. The Louisa [Id. 10,652]. Even the liens of seamen and bottomry-holders, which are regarded by courts of admiralty with so much favor, are held to be lost if not seasonably enforced.

By article 17, liv. 1, tit. 14, of the marine ordinance, the preference of the seamen over all other creditors is confined to their claims for wages for the last voyage. And the same provision is embodied in article 191 of the Code de Commerce. The wages due seamen for previous voyages are not privileged because, says the commentator, they should not have allowed the vessel which they had brought into port to depart without procuring payment of their wages. Rogron's Code de Com. p. 462.

In Packard v. The Louisa [supra] the question when a maritime lien not accompanied by possession will expire, was much discussed, and Mr. Justice Woodbury held that it will continue until the end of the next voyage, and thereafter until the rights of third persons have accrued. The same principle is applied to the lien of the bottomry-holder (The Charles Carter, 4 Cranch [8 U. S.] 327), and in England it would seem that the lien is barred, at least as against subsequent incumbrancers without notice, if the vessel be suffered to depart on a new voyage. The Royal Arch, Swab. 284. In Leland v. The Medora [Case No. 8,237], it was doubted whether a lien on a foreign vessel is not waived by allowing her to depart without any attempt to enforce it, and in The Eliza Jane [Id. 4,363]; it was held that a lien for supplies could not be enforced as against a bona fide purchaser, where the vessel had returned to Boston after the supplies had been furnished, and had been permitted to leave without any effort to enforce the lien. A similar decision was made in The John

Lowe [Id. 7,356], and in Ives v. The Buckeye State [Id. 7,117], it was suggested that upon the Great Lakes where several voyages were made during the season, there is great reason for limiting these tacit liens to the season of navigation, and for not allowing them to extend beyond one year.

The English admiralty reports, as well as our own, contain numerous cases where liens for salvage and for damages by collision have been held to be barred, under circumstances far less strong than the cases at bar. I have found none where, under similar circumstances, the lien has been sustained. In the cases at bar, we have every circumstance to which courts of admiralty look in determining whether a prescription has arisen. First—The libels were not filed until nearly two years after the cause of action accrued, the libellants having been during the whole period residents of this state, and under no disability to sue. Second—The vessel has made repeated voyages in the interim, and for a considerable time prior to the filing of the libels, has remained constantly within the jurisdiction. Third—The rights of an incumbrancer, bona fide, without notice, have intervened. I believe that by no principle or analogy declared in, or to be derived from any adjudged case, would the court be justified, under this state of facts, in enforcing this lien against the vessel in the hands of her present owner. The libel must therefore be dismissed.